1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   VINCE VIANE MISA,              )   Civil No. 07-1774-LAB(LSP)
                                    )
12                  Petitioner,     )
                                    )   REPORT AND RECOMMENDATION
13   v.                             )   DENYING PETITION FOR WRIT OF
                                    )   HABEAS CORPUS
14   V.M. ALMAGUER,                 )
                                    )
15                  Respondent.     )
     ───────────────────────────────
16

17   **I.  INTRODUCTION**

18        Vince Viane Misa, a state prisoner proceeding pro se

19   ("Petitioner"), has filed a Petition for Writ of Habeas Corpus

20   pursuant to 28 U.S.C. sec. 2254 challenging his San Diego Superior

21   Court conviction in case number SCN179647 for committing torture,

22   two counts of assault with a deadly weapon, and enhancement

23   allegations.  Respondent, V.M. Almager, Warden ("Respondent"), has

24   filed an Answer to the Petition.  Petitioner has filed a Traverse to

25   the Answer.

26        The Court has considered the Petition and Exhibits, Respon-

27   dent's Answer, Petitioner's Traverse and all the supporting

28   documents submitted by the parties.  Based upon the documents, and

1  for the reasons set forth below, the Court **RECOMMENDS** that the

2  Petition be **DENIED**.

3  **II.   FACTUAL BACKGROUND**

4         The following statement of facts is taken from the California

5  Court of Appeal opinion, *People v. Vince V. Misa,* No. SCN179647.

6  This Court gives deference to state court findings of fact and

7  presumes them to be correct. 28 U.S.C.A. sec. 2254(e)(1); *see also*

8  *Parke v. Raley,* 506 U.S. 20, 25-26 (1992) (holding findings of

9  historical fact, including inferences properly drawn from such

10  facts, are entitled to statutory presumption of correctness).  The

11  facts, as found by the Court of Appeals, are substantially as

12  follows:

13         In the early morning hours of April 25, 2004, Misa, Billy
   Newton, Joe Salazar, Kevin Hoock, Isaiah Coates and Dale Logie were
14  smoking methamphetamine (with the exception of Logie, who was
   "shooting up") in Logie's Oceanside apartment.  After they ran out
15  of drugs, Logie left the apartment to get more; shortly after his
   return, Misa, Newton and Salazar left, taking some of the drugs with
16  them.  Just after dawn, Misa, Newton and Salazar returned to Logie's
   apartment.  Salazar and Misa were each upset with Hoock who had
17  apparently stolen some items belonging to them.

18         Misa, who is of Samoan descent, is 6 foot, 3 inches tall and
   weighs approximately 300 pounds, talked to Logie in the garage, where
19  he picked up a golf club (driver) and started swinging it around.
   Sometime between 7:15 and 7:30 a.m., Misa went into the apartment and
20  approached Hoock from behind.  Hoock was sitting on a couch in
   Logie's living room.  Misa used the golf club to strike Hoock
21  forcefully on the top of the head.  Hoock fell to the floor and began
   to convulse; his skull was "cracked like an egg," exposing brain
22  tissue, and he was bleeding profusely.

23         Misa was very angry, yelling at Hoock and saying "you don't
   steal from me or my old lady," "you're going to pay for this" and
24  "I'm going to teach you a fucking lesson."  He taunted Hoock as he
   poked and prodded Hoock with the club and swung it near Hoock.  After
25  Hoock raised his hands to protect his head, Misa accused Hoock of
   trying to grab the golf club and either hit, or threatened to hit,
26  Hoock again.  The testimony of more than one witness suggested that
   Misa continued to harass Hoock in this manner for 15 to 30 minutes.
27  Misa used the same club to hit Coates, who was sitting across from
   Hoock, solidly in the chest, knocking the wind out of Coates.  Misa
28  then gave up the club to Newton.

1       Thereafter, Misa and Logie went between the apartment and
2   garage numerous times over the next 20 to 45 minutes, eventually
    leaving the apartment to go to the grocery store to buy breakfast
3   food.  Although Salazar, Newton and Coates each believed Hoock needed
    to be taken to the hospital, none of them called 911 out of fear of
4   retribution from Misa.  Instead, Newton and Salazar, who had some
    emergency medical training, tended to Hoock's wound and tried to keep
5   him awake.

6       By the time Misa and Logie returned with the groceries,
    Hoock's condition had worsened.  He was still bleeding quite a bit,
7   vomiting intermittently and lapsing in and out of consciousness.
    Salazar told Misa that Hoock needed to go to the hospital, but Misa
8   responded "he's not going anywhere . . . [h]e still has questions to
    answer."  Misa started to harass Hoock again until Salazar agreed to
9   cook breakfast; Misa and Logie sat across from Hoock as the two ate.
    After Misa and Logie finished eating, they left the apartment,
10  sometime during the noon hour.  After they left, Salazar and Newton
    took Hoock for medical treatment.

11      At that time, Hoock was incoherent, almost unconscious and
12  could not walk on his own.  He had a six-centimeter laceration on the
    top of his head and suffered from intracranial hemorrhaging.  His
13  injuries were such that the treating physician thought he was likely
    to have permanent impairment as a result of the attack.  Hoock was
14  comatose for ten days and remained in the hospital for more than two
    weeks.

15      In late May, Salazar had Newton turn over the golf club to
16  police.  In June, officers searched Logie's apartment; although some
    of the furniture had been removed and other items had been moved to
17  cover areas where Hoock had laid bleeding, the officers found specks
    of dried blood, later identified as Hoock's on other furniture, walls
18  and the pad underneath the carpeting. (Resp't Lodgment No. 4 at 2-4.)

19  **III.   PROCEDURAL BACKGROUND**

20      On June 14, 2001, the District Attorney for the County of San

21  Diego filed an Information charging Petitioner with one count of

22  torture (Cal. Penal Code sec. 206) and two counts of assault with a

23  deadly weapon by means of force likely to cause great bodily injury

24  [Cal. Penal Code sec. 245(a)(1)]. (Resp't Lodgment No. 9 at 1-2.)

25  It was further alleged that Petitioner suffered probation denial

26  priors [Cal. Penal Code § 1203(e)(4)], two prison priors [Cal. Penal

27  Code sec. 667.5(b)], a serious felony prior [Cal. Penal Code sec.

28  667(a)(1)], and a strike prior [Cal. Penal Code sec. 667(b)-(I) and

1  Cal. Penal Code sec. 1170.12.] (*Id.* at 1, 156.)

2       On March 7, 2005, a jury found Petitioner guilty on the count
3  of torture and both counts of assault with a deadly weapon likely to
4  produce great bodily injury. (*Id.* at 75-77; Resp't Lodgment No. 4 at
5  4.)  On April 22, 2005, Petitioner filed a Motion for a New Trial,
6  which was denied on April 29, 2005. (Resp't Lodgment No. 9 at 149,
7  243.)

8       On April 29, 2005, Petitioner was sentenced to an indetermi-
9  nate life term plus six years and a determinate term of 12 years.
10  (*Id.* at 244.)

11       On October 26, 2005, Petitioner appealed his convictions to
12  the California Court of Appeal. (*See* Resp't Lodgment No. 1.)
13  Petitioner argued (1) the torture conviction was based on insuffi-
14  cient evidence, (2) Cal. Penal Code sec. 206 is so vague that its
15  application to him violated his due process right to fair warning
16  and notice of the proscribed conduct, and (3) the court erred in
17  imposing the serious felony prior enhancement twice, because this
18  case was not a third strike case in which an indeterminate term must
19  be imposed for all current felonies. (*Id.* at 19, 32, and 42.)  On
20  April 23, 2006, the Court of Appeal affirmed Petitioner's convic-
21  tions. (Resp't Lodgment No. 4.)

22       On July 21, 2006, Petitioner sought review of the Court of
23  Appeal's decision in a Petition for Review to the California Supreme
24  Court. (Resp't Lodgment No. 7.)  On October 11, 2006, the California
25  Supreme Court denied the Petition without comment. (Resp't Lodgment
26  No. 8.)

27       On April 16, 2008, Petitioner filed the instant Petition for
28  Writ of Habeas Corpus ("Petition")  On September 8, 2008, Respondent

1    filed an Answer ("Answer") to the Petition.   On October 27, 2008,

2    Petitioner filed a Traverse to Respondents Answer.

3    **IV.  DISCUSSION**

4         28 United States Code, sec. 2254(a), sets forth the following

5    scope of review for federal habeas corpus claims:

6         The Supreme Court, a Justice thereof, a circuit judge, or a
     district court shall entertain an application for a writ of habeas
7    corpus in behalf of a person in custody pursuant to the judgment of
     a State court only on the ground that he is in custody *in violation*
8    *of the Constitution or laws or treaties of the United States.*

9    28 U.S.C.A. sec. 2254(a) (West 1994) (emphasis added).

10        The current petition is governed by the Anti-Terrorism and

11   Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*,

12   521 U.S. 320 (1997).  As amended, 28 U.S.C.A. sec. 2254(d) reads:

13   (d) An application for a writ of habeas corpus on behalf of a person
     in custody pursuant to the judgment of a State court shall not be
14   granted with respect to any claim that was adjudicated on the merits
     in State court proceedings unless the adjudication of the claim –
15
     (1) resulted in a decision that was *contrary to*, or involved an
16   *unreasonable application of*, clearly established Federal law, as
     determined by the Supreme Court of the United States; or
17
     (2) resulted in a decision that was based on an unreasonable
18   determination of the facts in light of the evidence presented in the
     State court proceeding.
19   28 U.S.C. sec. 2254(d)(1)–(2)(emphasis added)

20        To obtain federal habeas relief, Petitioner must satisfy

21   either sec. 2254(d)(1) or sec. 2254(d)(2). *See Williams v. Taylor*,

22   529 U.S. 362, 403 (2003).  The Supreme Court interprets sec. 2254

23   (d)(1) as follows:

24        Under the "contrary to" clause, a federal habeas court may

25   grant the writ if the state court arrives at a conclusion opposite

26   to that reached by this Court on a question of law or if the state

27   court decides a case differently than this Court has on a set of

28   materially  indistinguishable  facts.    Under  the  "unreasonable

1    application" clause, a federal habeas court may grant the writ if

2    the state court identifies the correct governing legal principle

3    from this Court's decisions but unreasonably applies that principle

4    to the facts of the prisoner's case. Id. at 412-13; *Lockyer v.*

5    *Andrade*, 538 U.S. 63, 73-74 (2003).

6        Where there is no reasoned decision from the states highest

7    court, the Court "looks through" to the underlying appellate court

8    decision. *Ylst v. Nunnemaker,* 501 U.S.797, 801-06 (1991).  If the

9    dispositive state court order does not "furnish a basis for its

10   reasoning," federal habeas courts must conduct an independent review

11   of the record to determine whether the state court's decision is

12   contrary to, or an unreasonable application of, clearly established

13   Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.

14   2000) (overruled on other grounds by *Lockyer,* 538 U.S. at 75-76);

15   *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a

16   state court need not cite Supreme Court precedent when resolving a

17   habeas corpus claim. *Early v. Packer,* 537 U.S. 3, 8 (2002).  "[S]o

18   long as neither the reasoning nor the result of the state-court

19   decision contradicts [Supreme Court precedent,]" *Id.,* the state

20   court decision will not be "contrary to" clearly established federal

21   law. *Id.*

22       A federal habeas corpus petition must allege a deprivation of

23   one or more federal rights to present a cognizable claim pursuant to

24   sec 2254.  A state's interpretation of its laws or rules provides no

25   basis for federal habeas corpus relief because no federal constitu-

26   tional question arises. *Estelle c. McGuire*, 502 U.S.62, 68 (1991)

27   (federal habeas corpus relief does not lie for errors of state law,

28   and federal courts may not reexamine state court determinations on

1    state law issues). As amended, § 2254(e)(1) provides: "[A]

2    determination of a factual issue made by a State court shall be

3    presumed to be correct." 28 U.S.C.A. sec. 2254(e)(1).

4         Petitioner claims that his constitutional rights to due

5    process, fair warning and notice of the proscribed conduct were

6    violated, and that there was an unreasonable application of

7    controlling precedent regarding his sentencing enhancement. Thus,

8    this federal court may only grant habeas relief where the state

9    court arrived at a decision with regard to Petitioner's claims that

10   were *contrary to*, or involved an *unreasonable application of*,

11   clearly established federal law.

12                    **Analysis**

13        Petitioner raises three grounds for relief: (1) the torture

14   conviction was based on insufficient evidence; (2) Cal. Penal Code

15   sec. 206 is so vague that its application to him violated his due

16   process right to fair warning and notice of the proscribed conduct;

17   and (3) the court erred in imposing the serious felony prior

18   enhancement twice, because this case was not a third strike case in

19   which an indeterminate term must be imposed for all current

20   felonies.

21        Respondent contends the state court's decision, which found

22   substantial evidence to support Petitioner's torture conviction, was

23   reasonable and is entitled to deference. Respondent argues that the

24   state court's decision that Cal. Penal Code sec. 206 is not

25   unconstitutionally vague is not contrary to, nor an unreasonable

26   application of, United States Supreme Court authority. Respondent

27   also argues Petitioner's third ground for relief fails to state a

28   cognizable basis for habeas corpus relief and the state court's

1    decision is not contrary to, nor an unreasonable application of,

2    controlling precedent.

3         **1.  Insufficient Evidence**

4         Petitioner claims there was insufficient evidence to support

5    his conviction for torture under Cal. Penal Code sec. 206.

6    Petitioner raised this claim on direct review to the California

7    Court of Appeal and the court denied it in a reasoned decision.

8    (Resp't Lodgment No. 4.)  Petitioner again raised the claim in his

9    Petition for Review to the California Supreme Court and the court

10   denied the petition without comment or citation. (Resp't Lodgment

11   No. 8.)

12        Respondent asserts that the state court's decision finding

13   substantial evidence to support Petitioner's torture conviction was

14   reasonable, as the court reached this decision after considering the

15   totality of the circumstances. (Answer at 7.)

16        Accordingly, this Court must look through to the opinion of

17   the Court of Appeal, as it was the last reasoned state-court

18   decision, to determine whether the state court's determination of

19   the merits of the claim was contrary to, or involved an objectively

20   unreasonable application of, clearly established federal law as set

21   forth by the United States Supreme Court. *See Ylst v. Nunnemaker,*

22   501 U.S. 797 (1991).

23        In denying the claim, the court stated:

24        Misa challenges the sufficiency of the evidence to support
     his torture conviction.  He contends, in part, that the evidence
25   introduced at trial does not support the jury's findings that he
     acted with the specific intent to cause cruel or extreme pain or
26   that he acted for revenge, persuasion or any sadistic purpose.  We
     conclude that under the standards for establishing torture as set
27   forth by the California Supreme Court precedents, Misa's argument is
     not well-taken.

28

                                   8                          07CV1774

1        The court continued its analysis by stating:

2            Section 206 provides that "[e]very person who, with the
   intent to cause cruel or extreme pain and suffering for the purpose
3  of revenge, extortion, persuasion, or for any sadistic purpose,
   inflicts great bodily injury . . . upon the person of another, is
4  guilty of torture."  The intent necessary for torture, that is, to
   cause cruel or extreme pain, does not require that the defendant
5  acted with premeditation or deliberation or had the intent to
   inflict prolonged pain.   Direct evidence of specific intent is
6  rarely available, although the circumstances surrounding the offense
   or other circumstantial evidence may permit an inference that one
7  acted with the intent to inflict cruel and extreme torture.  Here, the
   circumstantial evidence is sufficient to permit a reasonable trier
8  of fact to conclude that Misa acted with "the cold-blooded intent to
   inflict pain for personal gain or satisfaction," as necessary to
9  support a conviction for torture. (citations omitted.)

10       In a sufficiency of evidence claim, clearly established law

11  requires the court determine whether "any rational trier of fact

12  could have found the essential elements of the crime beyond a

13  reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979);

14  *Mikes v. Borg*, 847 F.2d 353, 356 (9th Cir. 1991).  In making this

15  determination, the Court is not "to ask itself whether it believes

16  that the evidence at the trial established guilt beyond a reasonable

17  doubt." *Jackson,* 443 U.S. at 318.  Rather this Court must view the

18  evidence in the light most favorable to the verdict, and must

19  presume the trier of fact resolved the conflicting evidence in favor

20  of the prosecution. *Id.* at 316, 326; *Taylor v. Stainer*, 31 F.3d 907,

21  908-09 (9th Cir. 1994).  Under *Jackson*, this Court must look to the

22  state criminal law in determining whether a fact finder could have

23  found the petitioner guilty beyond a reasonable doubt. *Jackson,* 443

24  U.S. at 324.

25       California Penal Code sec. 206 requires proof that:

26       (1) A person inflicted great bodily injury upon the person of
   another; and

27

28       (2) The person inflicting the injury did so with the specific
        intent to cause cruel or extreme pain and suffering for the
        purpose of revenge or for any sadistic purpose.

1   "Great bodily injury" means a significant or substantial
2   physical injury.

    The crime of torture does not require any proof that the perpetra-
3   tor intended to kill the other person or the person upon whom the
    injury was inflicted suffered pain.

4   California Jury Instructions - Criminal ("CALJIC") No. 9.90; *see*
5   *also* Resp't Lodgment No. 9 at 53.

6        Viewing the evidence in the light most favorable to the
7   verdict, a reasonable juror could have found Petitioner guilty of
8   violating sec. 206 beyond a reasonable doubt.  The state court found
9   the use of a golf driver with a substantial head, to strike Hoock in
10  the head, inflicted great bodily injury. (Resp't Lodgment No. 4 at
11  6.)  The great bodily injury consisted of a blow with sufficient
12  force to crack Hoock's skull at a location where the skull was close
13  to half an inch thick, Hoock lapsing in and out of consciousness,
14  and Petitioner's callous refusal to allow others to take Hoock to
15  the hospital for treatment. *(Id.* at 6-7.)  Additionally, the state
16  court noted Hoock's treating physician thought Hoock was likely to
17  suffer permanent impairment as a result of the strike to the head by
18  the golf club. *(Id.* at 3-4.)  Since great bodily injury is defined
19  as a significant or substantial physical injury, this Court cannot
20  conclude that these facts are insufficient for a reasonable juror to
21  find beyond a reasonable doubt that Petitioner inflicted great
22  bodily injury upon the person of another as defined by CALJIC No.
23  9.90.

24       The great bodily injury must be inflicted with the specific
25  intent to cause cruel or extreme pain or suffering for the purpose
26  of revenge or for any sadistic purpose. Cal. Penal Code sec. 206.
27  Petitioner taunted, poked and prodded Hoock for 30 minutes after he
28  struck Hoock on the head. (Resp't Lodgment No. 4 at 6.)  Petitioner

07CV1774

1   intended to inflict cruel and extreme pain and suffering, which is

2   evidenced by his callous behavior when he would not allow others to

3   take Hoock to the hospital for treatment. *(Id.* at 3, 7)  Petitioner

4   proceeded to eat breakfast while Hoock lay on the floor bleeding,

5   convulsing, and vomiting. (*Id.* at 2, 7)  Petitioner yelled profani-

6   ties at Hoock, including statements such as, "you don't steal from

7   me or my old lady," "you're going to pay for this," and "I'm going

8   to teach you a fucking lesson." (*Id.* at 2, 6) This Court cannot

9   conclude that these statements failed to provide the court with

10  sufficient evidence that Petitioner intended that Hoock suffer cruel

11  or extreme pain and suffering for the purpose of revenge, as

12  Petitioner inflicted the injuries in response to Hoock stealing from

13  him and his girlfriend. (*Id.* at 2, 6-7.)

14        These facts, coupled with those discussed above, lead this

15  Court to conclude that a jury had sufficient evidence to convict

16  Petitioner on the count of torture, as defined by the elements of

17  Cal. Penal Code sec. 206. *See Jackson*, 443 U.S. at 319.  Therefore,

18  the state court's denial of the claim was neither contrary to, nor

19  an unreasonable application of clearly established law. *See*

20  *Williams*, 529 U.S. at 412-13; 28 U.S.C. sec. 2254.  Petitioner is

21  not entitled to relief as to this claim. As a result, the Court

22  RECOMMENDS that Petitioner's claim be **DENIED**.

23        ***2.  Challenge to sec. 206 as Vague***

24        Petitioner claims Cal. Penal Code sec. 206 is so vague that

25  its application to him violates his federal due process right to

26  fair warning and notice of the proscribed conduct, under the Fifth

27  and Fourteenth Amendments. (Petition at 15.)  Specifically,

28  Petitioner argues the phrases "cruel or extreme pain or suffering,"

1    "revenge," "any sadistic purpose," and "torture" are vague provi-

2    sions within Cal. Penal Code sec. 206.[1]  (*Id.* at 15-22.)

3         Respondent asserts Petitioner's vagueness claim does not

4    warrant federal habeas relief because the California Court of

5    Appeal's decision that the state torture statute provides adequate

6    notice of the conduct prohibited by the statute, is not contrary to,

7    nor an unreasonable application of United States authority. (Answer

8    at 11.)

9         If a statute fails to provide adequate notice to ordinary

10   people of the kind of conduct prohibited or if the statute autho-

11   rizes arbitrary and discriminatory enforcement, then it is void for

12   vagueness. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  A statute

13   will not be enforced if it is deemed that the terms are "so vague

14   that men of common intelligence must necessarily guess at its

15   meaning and differ as to its application." *United States v. Lanier*,

16   520 U.S. 259, 266 (1997.)  In the absence of a statutory definition

17   of terms, courts construe the statutory term in accordance with its

18   ordinary or natural meaning.  *FDIC v. Meyer,* 510 U.S. 471, 476

19   (1994); *Smith v. U.S.,* 508 U.S. 223, 228 (1993.)

20        Here, Petitioner argues that the phrase "cruel or extreme

21   pain or suffering" is vague, yet offers no Supreme Court authority

22   interpreting the phrase.  It is incumbent on Petitioner to establish

23   the vagueness and its relation to federal authority.  Looking at the

24   ordinary meaning of each word and the words collectively, a person

25   of common intelligence would have no trouble understanding either

26   _____

27   [1]   Petitioner cites a number of California cases which define the
          various elements of Cal. Penal Code sec. 206.  However, this Court
28   is not bound by California law and therefore any precedent set by
          the California Courts interpreting the meaning of the phrases called
          into question by the Petitioner is inapplicable in considering a
          federal Petition for Writ for Habeas Corpus.

the meaning of the words or the conduct prohibited. "Cruel" means "disposed to inflict pain especially in a wanton insensate or vindictive manner." [Webster's Third New International Dictionary 546 (3d ed. 1968)] ("Webster's"). "Extreme" means "existing in the highest or greatest possible degree." (*Id.* at 807). "Pain" means "a state of physical or mental lack of well-being or physical or mental uneasiness that ranges from mild discomfort or dull distress to acute often unbearable agony, may be generalized or localized and is the consequence of being injured or hurt physically or mentally." (*Id.* at 1621). "Suffering" means "the endurance of or submission to affliction, pain, loss." (*Id.* at 2284) Consequently, considering the ordinary meaning of these words, when taken together in context, a person of common intelligence would not have to guess at its meaning, nor would it differ in its application. *Lanier*, 520 U.S. at 266.  Therefore, this phrase is not unconstitutionally vague.

Petitioner claims the phrase "any sadistic purpose" is vague within Cal. Penal Code sec. 206, because "sadism"is defined in terms of sexual gratification. (Petition at 21.)  Petitioner fails to cite to any federal authority to support his argument.  The meaning of "sadistic" is not defined in any Supreme Court case in connection with torture[2], so the Court looks to the ordinary meaning of the word.  "Sadistic" means "of or characterized by sadism." (Webster's at 1998).  One meaning of sadism is "delight in physical or mental cruelty." (*Id.*)  Taking the meaning in the context of the statute, a person of ordinary intelligence would not have to guess at the

---

[2]  In *Mishkin v. State of N.Y.*, 383 U.S. 502 (1966), the court stated the term sadistic is synonymous with the term obscene for purpose of a criminal obscenity statute and held the term "sadistic" was not vague.  However, as the issue in *Mishkin* was a criminal obscenity statute, the case and the court's interpretation of the word 'sadistic' is not applicable here.

07CV1774

meaning of "any sadistic purpose." *Lanier*, 520 U.S. at 266. Therefore, this phrase is not unconstitutionally vague.

Petitioner argues that "torture" as used in Cal. Penal Code sec. 206 is vague. Specifically, Petitioner argues that in order to prove "torture," a jury must find "infliction of extreme and prolonged pain." Since "infliction of extreme and prolonged pain" was not part of the jury instructions in this case, the term "torture" is vague. (Petition at 23.) The Supreme Court has not interpreted Cal. Penal Code sec. 206 or any other similar state torture statute. "Torture" means "the infliction of intense pain (as from burning, crushing, wounding) to punish or coerce someone . . . to cause intense suffering to inflict anguish on . . . subject to severe pain." (Webster's at 2414). These various definitions of "torture" are clear enough that people of ordinary intelligence would not have to guess at the meaning of "torture." *Lanier*, 520 U.S. at 266. Petitioner's argument fails as this word is not unconstitutionally vague.

Petitioner argues for exclusion of the word "revenge" from Cal. Penal Code sec. 206. (Petition at 19.) However, Petitioner also concedes the word has a settled meaning, and therefore discredits his own argument that "revenge" is vague.[3] (*Id.* at 20.) However, Petitioner asserts that the inclusion of the word "revenge" in Cal. Penal Code sec. 206 renders virtually any aggravated assault in violation of Cal. Penal Code sec. 245 which results in great bodily

---

[3] However, had Petitioner asserted the that word "revenge" was vague, that argument would have failed. While there is no Supreme Court authority interpreting the word "revenge," the Court looks to the ordinary meaning of the word. "Revenge" means "to avenge or seek vengeance for a wrong done." (Webster's at 1942). A person of common intelligence would not have to guess at the meaning of the word "revenge," and therefore, it is not vague. *Lanier*, 520 U.S. at 266.

07CV1774

injury as torture under sec. 206. (*Id.*)

As defined in Cal. Penal Code sec. 240, "assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code sec. 240.  The statute Petitioner refers to Cal. Penal Code sec. 245, which establishes the punishment for an assault which utilizes "a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." Cal. Penal Code sec. 245.  Neither of these statutes uses the word "revenge," unlike Cal. Penal Code sec. 206.  Moreover, a person could not be charged with a violation of Cal. Penal Code sec. 206 if he/she committed an aggravated assault resulting in great bodily injury, thus violating Cal. Penal Code sec. 245, "even including situations of mutual combat, where all parties attempt to inflict counter blows." (Petition at 20.)  A person could violate Cal. Penal Code sec. 245 through a single blow with his/her fist to the face of another, yet not violate Cal. Penal Code sec. 206 so long as the requisite intent of Cal. Penal Code sec. 206 is not present.  Therefore, Petitioners argument fails.

Therefore, the California Court of Appeal's determination, which rejected Petitioner's contentions that an ordinary person cannot understand the conduct prohibited by Cal. Penal Code sec. 206, is not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  No such precedent exists regarding Cal. Penal Code sec. 206 or any similar state torture statute. 28 U.S.C.A. sec. 2254(d)(1)-(2) Despite the lack of precedent, the meaning of the words of Cal. Penal Code sec. 206 are not such that a person of common intelligence would have to guess at their meaning, whether taken individually as Petitioner challenges

1    them or together as they appear in the language of the statute.  As

2    a result, the Court RECOMMENDS Petitioner's claims in this regard be

3    **DENIED**.

4        ***3. Imposition of the Serious Felony Prior Enhancement Twice***

5        Petitioner asserts that the court erred when it imposed the

6    serious felony prior enhancement twice, since this case was not a

7    third strike case in which the court is required to impose an

8    indeterminate term for all current felonies. (Petition at 24.)

9    Petitioner claims that the court incorrectly relied on a California

10   Supreme Court ruling of *People v. Williams,* 34 Cal.4th 387 (2004).[4]

11   *Id.* Petitioner argues that he is only a two-strike defendant and is

12   therefore not subject to indeterminate terms for each of the current

13   felonies. *Id.* at 26-27.  His arguments are based in a violation of

14   "due process rights under the Fifth and Fourteenth Amendments, and

15   similar state provisions under article I, sections 7 and 24."[5]

16   (Petition at 24.)

17       Respondent argues that Petitioner fails to state a cognizable

18   basis for federal habeas relief. (Answer at 13.)  Additionally,

19   Respondent states that the state court determination of the merits

20   of the claim was neither contrary to, nor an unreasonable applica-

21   tion of, controlling precedent. (*Id.*)  Consequently, Respondent

22   argues that Petitioner has no justifiable claim to habeas corpus

23   relief.

24

25   _____

26   [4]    The court recognized that unlike the defendant in *Williams,*
        Petitioner had two strikes.  However, the court determined that
27      regardless of that fact, Petitioner was a recidivist, and therefore
        the analysis of the applicable statutory scheme found in *Williams*
        was applicable to Petitioner's case.

28   [5]    Petitioner does not state if he is referring to the California
        Constitution or some other authority when making this assertion.

1    To receive federal habeas relief, the Petitioner must show (1)

2   the state court arrived at a decision opposite to a decision reached

3   by the U.S. Supreme Court on a question of law; or (2) the state

4   court identified the correct governing legal principle from the U.S.

5   Supreme Court's decisions, but unreasonably applied the principle to

6   the facts of the present case. *Williams*, 259 U.S. at 412-13; *Lockyer*

7   *v. Andrade*, 538 U.S. 63, 73-74 (2003). "Whether a petition for writ

8   of habeas corpus addressed to a federal court is properly drawn and

9   what allegations it must contain are questions for that court alone

10   to determine." *Lewis v. Casey*, 518 U.S. 343, 379 (1999).

11    If a petitioner for habeas corpus relief wishes to claim a

12   violation of due process rights under the Fourteenth Amendment, the

13   petitioner must do so in state court, in addition to doing so in

14   federal court. *Hiivala v. Wood*, 195 F.3d 1098, 1107 (9th Cir. 1999)

15   Here, Petitioner generally alleges a violation of his due process

16   rights under the Fifth and Fourteenth Amendments in both federal

17   court and in state court. (Petition at 24, Resp't Lodgment No. 1 at

18   42.)  However, Petitioner fails to support his argument with any

19   federal authority.  Instead, he only cites to California law. (Pet.

20   at 24-27)

21    Regardless, this Court is without jurisdiction to determine

22   whether the trial court's sentencing of Petitioner violated Cal.

23   Penal Code sec. 667(a).[6]  A federal court may entertain a petition

24   for writ of habeas corpus only on the ground that the petitioner is

25

26   ───────────────

27   [6]    Cal. Penal Code § 667(a) provides: "[A]ny person convicted of a
       serious felony who previously has been convicted of a serious felony
       . . . shall receive, in addition to the sentence imposed by the
       court for the present offense, a five-year enhancement for each such
28   prior conviction on charges brought and tried separately. The terms
       of the present offense and each enhancement shall run
       consecutively."

1    "in custody in *violation of the Constitution or laws or treaties of*
2    *the United States.*" 28 U.S.C. sec.2254(a) (emphasis added).   A
3    state's interpretation of its laws or rules provides no basis for
4    federal habeas corpus relief because no federal constitutional
5    question arises, unless there is a showing of fundamental unfair-
6    ness. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (federal habeas
7    corpus relief does not lie for errors of state law, and federal
8    courts may not reexamine state court determinations on state law
9    issues); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1980)
10   (federal habeas courts must respect state court's application of
11   state law; *Jackson v. Ylst,* 921 F.2d 882, 885 (9th Cir. 1990)
12   (federal courts have no authority to review state's application of
13   state law.)

14       The appellate court thoroughly analyzed Petitioner's claim that
15   the trial court erred in applying the prior conviction enhancement
16   twice. (Resp't Lodgment No. 4 at 9-13.)   The court agreed with the
17   California Supreme Court decision in *People v. Williams* that *People*
18   *v. Tassell*, the case relied upon by Petitioner, utilized the
19   language of Cal. Penal Code sec. 1170.1 and not on Cal. Penal Code
20   sec. 667(a). (*Id.* at 10.)   Cal. Penal Code sec. 1170.1 applies only
21   to *determinate* sentences. Here, Petitioner received *indeterminate*
22   sentences on the sentence enhancements. (*Id.*) Therefore, Peti-
23   tioner's argument was unpersuasive. Further, Petitioner fails to
24   make the requisite showing of a fundamental unfairness. Rather, he
25   only alleges that the court misapplied its own laws.   Thus, this
26   Court gives deference to the state court determination.

27       Here, Petitioner bases his claim on a question of state law
28   rather than on a federal constitutional question.   This Court finds

1   no United States Supreme Court precedent for which the state court's

2   ruling could be considered to contradict or unreasonably apply

3   clearly established federal law.  The reasoned decision from the

4   state court strictly interpreted its own laws. Therefore, Petitioner

5   has no basis for federal habeas corpus relief.  As a result, the

6   decision of the state court will be given deference. The Court

7   RECOMMENDS that Petitioner be **DENIED** relief on this claim.

8        V.   <u>CONCLUSION AND RECOMMENDATION</u>

9        In sum, the Court **RECOMMENDS** the Petition for Writ of Habeas

10  Corpus be **DENIED** with prejudice on the merits.

11

12       The Court submits this Report and Recommendation to United

13  States District Judge Larry A. Burns under 28 U.S.C. sec. 636(b)(1)

14  and Local Civil Rule HC.2 of the United States District Court for

15  the Southern District of California.  For the reasons outlined

16  above, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1)

17  approving and adopting this Report and Recommendation, and (2)

18  directing that Judgment be entered denying the Petition.

19       **IT IS ORDERED** that no later then <u>January 5, 2009</u>, any party to

20  this action may file written objections with the Court and serve a

21  copy on all parties.  The document should be captioned "Objections

22  to Report and Recommendation."

23       **IT IS FURTHER ORDERED** that any reply to the objections shall be

24  filed with the Court and served on all parties no later than

25  <u>January 26, 2009</u>.  The parties are advised that failure to file

26  objections within the specified time may waive the right to raise

27  those objections on appeal of the Court's order. *See Turner v.*

28  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst,* 951

1 F.2d 1153, 1156 (9th Cir. 1991).

2 DATED:   December 4, 2008

3

4

5

6

7                     Hon. Leo S. Papas
                      U.S. Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28