1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   VINCE VIANE MISA,                              CASE NO. 07cv1774-LAB (LSP)

12                              Petitioner,        **ORDER ADOPTING REPORT
                                                    AND RECOMMENDATION AND**
          vs.
13                                                  **DENYING PETITION FOR WRIT
                                                    OF HABEAS CORPUS**
14   V.M. ALMAGER, Warden,

15                              Respondent.

16

17        Petitioner Vince Misa ("Misa"), a state prisoner, filed his federal habeas petition in this

18   Court on September 7, 2007. (Dkt. No. 1.)  He filed an amended petition on February 15,

19   2008 and a second amended petition on April 15, 2008.  (Dkt. Nos. 7, 9.)  Pursuant to 28

20   U.S.C. § 636, his operative petition was referred to Magistrate Judge Leo Papas for a report

21   and recommendation ("R&R").  Respondent Almager ("Almager") filed an answer to Misa's

22   petition on September 8, 2008.  (Dkt. No. 17.)  Judge Papas issued his R&R on December

23   4, 2008; he recommended that Misa's petition be denied with prejudice on the merits.  (Dkt.

24   No. 19.)

25        On March 7, 2005, a California jury convicted Misa of one count of torture and two

26   counts of assault with a deadly weapon likely to produce great bodily injury.  (R&R 4.)  On

27   April 29, 2005, he was sentenced to a life term for the torture conviction and a 12-year term

28   for the assault convictions.  (*Id.*)  Misa's habeas petition challenges his conviction and

- 1 -                                                     07cv1774

1  sentence on three grounds: (1) there was insufficient evidence that he was guilty of torture;

2  (2) the torture provision of California's Penal Code is unconstitutionally vague; and (3) the

3  trial court erred in its application of a prior conviction to enhance Misa's sentence.  The Court

4  agrees with the R&R that these objections are without merit and therefore **DENIES** Misa's

5  habeas petition.

6  **I.      Legal Standards**

7        Because Misa is proceeding *pro se*, the Court construes his pleadings liberally and

8  affords him the benefit of any doubt.  *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621,

9  623 (9th Cir. 1988).  That said, "[p]ro se litigants must follow the same rules of procedure that

10 govern other litigants."  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

11        "The district judge must determine de novo any part of the magistrate judge's

12 disposition that has been properly objected to.  The district judge may accept, reject, or

13 modify the recommended disposition; receive further evidence; or return the matter to the

14 magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  In other words, "the district

15 judge must review the magistrate judge's findings and recommendations de novo *if objection

16 is made*, but not otherwise."  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.

17 2003) (en banc).

18        The R&R does a commendable job of setting forth the scope of review for federal

19 habeas corpus claims, and the Court does not need to replicate its discussion.  The most

20 important point is that Misa's federal habeas petition is governed by the Anti-Terrorism and

21 Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), which, as amended, reads:

22              An application for a writ of habeas corpus on behalf of a person
                in custody pursuant to the judgment of a State court shall not be
23              granted with respect to any claim that was adjudicated on the
                merits in State court proceedings unless the adjudication of the
24              claim --

25              (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
26              determined by the Supreme Court of the United States; or

27              (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in
28              the State court proceeding

1    28 U.S.C. § 2254(d)(1)-(2).  To obtain federal habeas relief, Misa must satisfy either §

2    2254(d)(1) or §2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2003).  If his

3    conviction in state court did not violate established federal law, and if it was not categorically

4    unreasonable, Misa is not entitled to habeas relief.

5    **II.    Procedural History**

6         After Misa was convicted on March 7, 2005 and sentenced on April 25, 2005, he

7    appealed his conviction to the California Court of Appeal on October 26, 2005.  Misa made

8    the same three objections to his conviction and sentence that he now makes in his habeas

9    petition.  The Court of Appeal affirmed Misa's conviction on April 23, 2006.  Misa then

10    appealed to the California Supreme Court, which denied his petition without comment on

11    October 11, 2006.  Misa then sought habeas relief in federal court.

12    **III.    Analysis**

13         The Court will address in turn each of Misa's three challenges to his conviction and

14    sentence in state court.  For the purposes of this analysis, the Court takes to be true the

15    facts of this case as articulated in the California Court of Appeal opinion.[1]  28 U.S.C. §

16    2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a

17    person in custody pursuant to the Judgment of a State court, a determination of a factual

18    issue made by a State court shall be presumed to be correct.").  These facts are quoted at

19    length in the R&R, and Misa does not take issue with them.  (R&R 2-3.)

20         The essentials are as follows.  Misa and a group of men were smoking

21    methamphetamine in the early morning hours of April 25, 2004.  Misa was upset with one

22    of the men, Kevin Hoock ("Hoock"), apparently for stealing from him.  Sometime between

23    7:15 and 7:30 a.m. Misa approached Hoock from behind holding a golf club (specifically, a

24    driver) and swung it at Hoock's head, connecting.  Hoock was instantaneously in awful

25    shape; he was bleeding profusely and his brain tissue was exposed.  Misa was enraged, and

26    yelling at Hoock "You don't steal from me or my old lady," "You're going to pay for this," and

27

28        [1] As the R&R explains, "[w]here there is no reasoned decision from the state's highest court, the Court 'looks through' to the underlying appellate court decision" to conduct its analysis.  (R&R 6, 8.)

        07cv1774

1 "I'm going to teach you a fucking lesson."  For 15 to 30 minutes, he continued to taunt, prod,

2 and threaten Hoock with the golf club.  After more time passed and Hoock's condition

3 worsened, Misa, who had since given up the golf club, refused to let his companions take

4 Hoock to the hospital and further harassed him.  At this point Hoock was still bleeding,

5 vomiting intermittently, and lapsing in and out of consciousness.  It was not until one

6 companion agreed to cook breakfast and Misa ate that Hoock was taken to the hospital.

7           **1.**      **Sufficiency of Evidence for Torture Conviction**

8         Misa first challenges his conviction on the grounds that there was insufficient evidence

9 that he "tortured" his victim.  "Petitioner acted," Misa argues, "not with the vicious, cold-

10 blooded, calculated intent to cause pain and suffering required for torture, but out of a brief,

11 spontaneous explosion of assaultive behavior."  (Obj. to R&R 3.)  The question before the

12 Court, however, is not whether Misa *in fact* tortured Hoock, but whether "*any* rational trier

13 of fact could have found the essential elements of the crime beyond a reasonable doubt."

14 *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  It is irrelevant what *this Court* believes the

15 evidence at trial established.  *Id.* at 318-19.  This standard, which Misa does not dispute, is

16 reflected in the California Court of Appeal's analysis, quoted at length in the R&R:

17                 Section 206 provides that [e]very person who, with the intent to
cause cruel or extreme pain and suffering for the purpose of
18                 revenge, extortion, persuasion, or for any sadistic purpose,
inflicts great bodily injury . . . upon the person of another, is
19                 guilty of torture.'  The intent necessary for torture, that is, to
cause cruel or extreme pain, does not require that the defendant
20                 acted with premeditation or deliberation or had the intent to inflict
prolonged pain.  Direct evidence of specific intent is rarely
21                 available, although the circumstances surrounding the offense
or other circumstantial evidence may permit an inference that
22                 one acted with the intent to inflict cruel or extreme pain.  Here,
the circumstantial evidence is sufficient to permit a reasonable
23                 trier of fact to conclude that Misa acted with "the cold-blooded
intent to inflict pain for personal gain or satisfaction," as
24                 necessary to support a conviction for torture.

25 The conclusion of the Court of Appeal is neither unreasonable nor contrary to established

26 federal law.  California's Penal Code provides: "Every person who, with the intent to cause

27 cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for

28 any sadistic purpose, inflicts great bodily injury . . . is guilty of  torture."  Cal. Pen. Code §

1   206.  Thus, to be guilty of torture, Misa must have (1) inflicted great bodily injury upon his

2   victim (2) with the intent to cause cruel or extreme pain for any of several purposes.  Misa

3   does not dispute that his actions inflicted great bodily injury upon Hoock.  (Habeas Mem. 4-5,

4   11; Opp'n to R&R 3.)  He does dispute that he intended anything more.  (Opp'n to R&R 3.)

5   
6   
7   
8   
9   

> [N]either the blow nor any of the subsequent actions, nor the failure to seek medical treatment for Hoock for many hours, were undertaken with the requisite cold-blooded intent to inflict pain for personal gain or satisfaction required for torture.  None of the acts of taunting, poking and slapping which the prosecutor argued constituted torture reflected an intent to inflict great bodily injury or even pain for any of the proscribed purposes of the statute.

10   (Habeas Mem. 11.)  Misa continues and urges that taunting and slapping Hoock, and not

11   immediately seeking medical treatment for him, leaves room for a single interpretation – "that

12   the many methamphetamine infused persons present, including petitioner, and the other

13   residents of the house who feared CPS intervention, were all clueless about how to proceed

14   . . . ." (*Id.*)

15   This Court must consider the evidence in the light most favorable to the prosecution,

16   *Jackson*, 443 U.S. at 319, and in doing so does not hesitate to accept the trier of fact's

17   conclusion that Hoock suffered a great bodily injury when Misa hit him in the head with a golf

18   club.  Hoock went to the hospital unconscious, bleeding from his head, barely able to walk

19   on his own, and suffering from intracranial hemorrhaging.  (R&R 3, 10.)  His treating

20   physician thought he was permanently impaired, and he was in a coma for ten days.  (*Id.*)

21   As for Misa's intent, Misa acknowledges that, after striking Hoock, he taunted, poked,

22   slapped, and prodded him.  (Habeas Mem. 11.)  Misa also acknowledges that he stood in

23   the way of his companions taking Hoock to the hospital.  (*Id.*)  Misa yelled profanities at

24   Hoock, including "You don't steal from me or my old lady" and "I'm going to teach you a

25   fucking lesson."  Misa ate breakfast while Hoock suffered, severely and demonstrably, from

26   his injury.  (R&R 2-3, 11.)  The Court concludes that a reasonable jury could have found that

27   Misa, beyond injuring Hoock, meant to make Hoock suffer cruel or extreme pain, whether

28   as revenge for stealing from him and his girlfriend or for some other sadistic purpose.  The

1   Court rejects Misa's contention that the only sensible interpretation of the facts of this case

2   is that Misa and his friends were spun on methamphetamine, unsure what to do, and hopeful

3   that Hoock's condition would improve.  Misa's claim that his torture conviction rested upon

4   insufficient evidence is therefore **DENIED**.

5              **2.       Vagueness of Cal. Penal Code § 206**

6              Misa also claims the torture provision of California's Penal Code, § 206, is

7   unconstitutionally vague and therefore violates his due process rights.  (Habeas Mem. 15-

8   24.)  He relies upon the Supreme Court's decision in *United State v. Lanier*, 520 U.S. 259,

9   117 S. Ct. 1219 (1997), which held that the vagueness doctrine bars enforcement of "a

10  statute which either forbids or requires the doing of an act in terms so vague that men of

11  common intelligence must necessarily guess at its meaning and differ as to its application."

12  *Id.* at 266 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).  Rather than

13  attack § 206 holistically, Misa picks it apart and attacks its component phrases or words, in

14  particular "cruel or extreme pain and suffering," "revenge," "any sadistic purpose," and

15  "torture."  He concludes: "In short, Penal Code section 206 is riddled with vague terms which

16  fail to give fair notice to the defendant when an assault causing great bodily injury crosses

17  the line into torture and which fail to guide the jury in its decision-making process."  (Habeas

18  Mem. 23-24.)

19             The California Court of Appeal rejected this argument.  Citing *Kolender v. Lawson*,

20  461 U.S. 352 (1983), the Court concluded that an ordinary citizen can understand what

21  behavior § 206 prohibits.[2]  (Answer 12.)  While Misa's arguments are articulate enough, he

22  fails to heed the legal standards involved in habeas cases and show how the Court of

23  Appeal's decision was contrary to or an unreasonable application of federal law.  In his

24  Objections to the R&R, Misa devotes a single paragraph to this issue and merely recites the

25  broad principles of the vagueness doctrine.  (Obj. to R&R 4.)  The case law Misa cites is

26  overwhelmingly California case law; as the R&R says, "[i]t is incumbent on Petitioner to

27

28          [2] *Kolender* held that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender*, 461 U.S. at 357.

1   establish the vagueness and its relation to federal authority." (R&R 12.)  Misa's global

2   argument against § 206 – its language was "lifted from murder cases and creates an

3   imperfect fit when used as a definition of a separate crime" – is itself logically distinct from

4   the accusation that the criminal statute is too vague for the common person to understand.

5   (Habeas Mem. 16.)  The R&R methodically discusses the component parts of § 206 that

6   Misa alleges are unconstitutionally vague and concludes that each of them is clear enough

7   that people of ordinary intelligence would not have to guess at their meaning.

8         This Court agrees.  The California Court of Appeal's determination that an ordinary

9   person is capable of understanding the phrases or words "cruel or extreme pain and

10  suffering," "revenge," "any sadistic purpose," and "torture" was not contrary to, nor an

11  unreasonable application of, clearly established federal law.  The Court is all the more

12  confident in this conclusion given that Misa made no attempt to address the R&R's

13  discussion head-on in his Objection, and instead just recited the *Connally* vagueness

14  standard and another Supreme Court decision to the effect that "n[o] one may be required

15  at peril of life, liberty or property to speculate as to the meaning of penal statutes."

16  (Objection 4 (citing *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).  The Court rejects

17  Misa's argument that Cal. Pen. Code § 206 is unconstitutionally vague.

18        **3.      Imposition of Prior Felony Enhancement**

19        Finally, Misa objects to the calculation of his sentence.  As he explains, "the court

20  imposed five consecutive years on each of the two unstayed current convictions, based on

21  the same serious felony prior."  (Habeas Mem. 24.)  Misa believes he should have been

22  subject to only one sentencing enhancement; being subjected to two, he argues, violated his

23  Fifth and Fourteenth Amendment rights to due process.

24        As the R&R explains, "[t]he appellate court thoroughly analyzed Petitioner's claim that

25  the trial court erred in applying the prior conviction enhancement twice."  (R&R 18.)  Misa's

26  challenge boils down to an assertion that the California Court of Appeal got California law

27  wrong.  But that cannot be grounds for federal habeas relief, which is appropriate only when

28  a petitioner is in custody "in violation of the Constitution or laws or treaties of the United

1   States." 28 U.S.C. § 2254(a). The case law cited by the R&R is clear on this point. "[W]e

2   reemphasize that it is not the province of a federal habeas court to reexamine state-court

3   determinations on state-law questions. In conducting habeas review, a federal court is

4   limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

5   United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *Estelle* even makes clear

6   that ***errors*** of state law do not automatically entitle a petitioner to federal habeas relief. *See*

7   *also Lewis v. Jeffers*, 497 U.S. 764, 780 (1980) ("[F]ederal habeas corpus relief does not lie

8   for errors of state law . . . "). If such an error results in a fundamentally unfair result, or a

9   violation of federal constitutional law, this Court would have a different view of the matter,

10   but Misa merely alleges a violation of his due process rights without citing to any federal

11   authority.

12         The California Court of Appeal's application of state law is entitled to respect. *Lewis*,

13   497 U.S. at 780. The Court agrees with the R&R that the court's decision cannot fairly be

14   said to contradict or unreasonably apply clearly established federal law. Misa is therefore

15   not entitled to federal habeas relief on account of his sentencing court twice applying a prior

16   conviction enhancement. This claim is also **DENIED**.

17   **IV.    Conclusion**

18         After careful consideration of Misa's arguments, the Court concludes: (1) a reasonable

19   trier of fact could have found Misa guilty of torture; (2) California's criminal torture statute is

20   not so vague that reasonable men and women have to guess as to its meaning; and (3) the

21   question whether Misa's sentencing court properly applied his prior conviction in fixing his

22   sentence is beyond the concern of Misa's federal habeas petition. The R&R is **ADOPTED**,

23   and Misa's petition for writ of habeas corpus is **DENIED**.

24         **IT IS SO ORDERED**.

25   DATED: May 5, 2009

26                                  *Larry A. Burns*

27                             **HONORABLE LARRY ALAN BURNS**
                          United States District Judge

28